UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES WOODMANSEE, : | |
|         Plaintiff, : | |
| : | |
| v. : | |
| : | No. 3:04cv1896(WWE) |
| OFFICER PATRICK MICKENS #37, : | |
| individually and in his : | |
| official capacity; OFFICER : | |
| RYAN KELSEY, individually and : | |
| in his official capacity; : | |
| LIEUTENANT TIMOTHY MENARD, : | |
| individually and in : | |
| his official capacity, : | |
| LOUIS J. FUSARO, SR., : | |
| individually and in his : | |
| official capacity, : | |
| CITY OF NORWICH, : | |
|         Defendants. : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

     The genesis of this civil rights action is plaintiff James Woodmansee's arrest by city of Norwich Police Officers Patrick Mickens and Ryan Kelsey.  Plaintiff alleges the following federal claims based on 42 U.S.C. § 1983:   Officer Mickens, Officer Kelsey, Lieutenant Timothy Menard and Chief of Police Louis Fusaro violated his right to be free from excessive force and false arrest under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and hindered redress of plaintiff's injuries through "an appropriate civil proceeding" in violation of the First, Sixth and Fourteenth Amendments of the United States Constitution (count one); and defendants Fusaro and the city of Norwich are liable for inadequate training, supervision and hiring of its police officers (counts two, three and four).  Plaintiff alleges the following state law

claims against Mickens, Kelsey and Menard as follows:   Violation of Article 1, section 7, 8 and 9 of the Connecticut Constitution (count five); recklessness and gross negligence (count six), assault and battery (count seven); negligence (count eight); negligent infliction of emotional distress (count nine); and intentional infliction of emotional distress (count ten).

Defendants have filed a motion for summary judgment on all counts with the exception of the claims of Fourth Amendment excessive force, and the state law claims of assault and battery and intentional infliction of emotional distress against defendants Mickens and Kelsey.   For the following reasons, the motion for summary judgment will be granted in part.

## Background

In support of the motion for summary judgment, defendants have submitted a statement of undisputed facts in compliance with Local Rule 56(a)(1), exhibits and affidavits.  However, plaintiff has failed to submit a Local Rule 56(a)(2) statement in opposition to the motion for summary judgment.  Local Rule 56(a) provides that all material facts set forth in the Local Rule 56(a)(1) statement "will be deemed admitted unless controverted" by a Local Rule 56(a)(2) statement.  Accordingly, in light of plaintiff's non-compliance, the following facts as asserted in defendants' Local Rule 56(a)(1) statement are deemed admitted.  Cashman v. Ricigliano Jr., 2004 WL 1920798 (D.Conn. 2004).

On December 8, 2001, Officers Mickens and Kelsey were dispatched to the residence of Colleen Woodmansee at 6A Maennechor Avenue in Norwich, Connecticut, in response to a 911 call reporting a domestic disturbance.

At the residence, the officers met with Ms. Woodmansee, who informed them that she had recently moved into her own apartment after separation from her husband, plaintiff James Woodmansee. She explained that she was fearful of plaintiff and had protective orders issued against him in the past.

Ms. Woodmansee described the following events to the officers. Plaintiff and two of his friends came over to her apartment on the evening of December 7, 2001, but left after an hour of consuming alcohol with Ms. Woodmansee. In the early morning hours of December 8th, plaintiff returned to her apartment. Ms. Woodmansee and plaintiff then got into a verbal and physical confrontation. He shoved her down onto her bed, attempted to kiss and disrobe her, threw some of her personal items around the apartment, and flipped over her bed mattress. She asked him to stop and to leave the apartment. After she ran into her daughter's room and dialed 911, plaintiff left her apartment.

The officers observed that Ms. Woodmansee's personal items appeared to have been thrown around the apartment and that her mattress had been flipped off her bed.

The officers then drove to plaintiff's residence in Norwich to question him about the incident reported by his wife. The officers interviewed plaintiff on the front porch of his residence. He admitted to having visited Ms. Woodmansee's apartment twice, having drunk alcohol while at the apartment, and asking his wife for sex during his second visit. He represented that his wife had become angry with him, asked him to leave and dialed 911.

At that time, based on what they had observed and learned from the individuals, Officer Mickens believed that probable cause existed to arrest plaintiff for disorderly

3

conduct. He informed plaintiff that he was under arrest for disorderly conduct during the domestic dispute with his wife at her apartment.

Officers Mickens and Kelsey then each took of one of plaintiff's arms. However, plaintiff broke free of the officers' grasp. Plaintiff pushed backwards away from the officers and backed into and broke a porch window.

Plaintiff then moved forward and grabbed onto the handle of Officer Kelsey's holstered firearm and began tugging on the gun. Officer Kelsey placed his hands onto his gun and onto plaintiff's hands to prevent plaintiff from gaining control of the gun. During this struggle, Officer Kelsey and plaintiff fell to the porch floor.

The officers verbally commanded plaintiff to cease his aggressive conduct towards the officers. After plaintiff ignored these commands, Officer Mickens determined that the situation required use of his ASP-baton to gain control over plaintiff. He struck plaintiff in the thigh with his baton. Plaintiff then released his grasp on Officer Kelsey's gun but continued to struggle with Officer Kelsey.

Officer Mickens administered baton strikes to plaintiff's legs. Plaintiff then, while lying on his back, punched and kicked the officers.

The officers instructed plaintiff to stop resisting arrest and to roll onto his stomach so that they could handcuff him. When plaintiff continued swinging and kicking at them, the two officers administered more baton strikes. Plaintiff then rolled over onto his stomach and allowed himself to be handcuffed.

The officers transported plaintiff to the police station for processing. They had no further contact with plaintiff after transport.

Lieutenant Timothy Menard interviewed plaintiff for bond purposes, at which time

he remarked that plaintiff appeared to be intoxicated or under the influence of narcotics. Plaintiff displayed drastic mood swings and was unable to listen to Lieutenant Menard's instructions or maintain a conversation. Plaintiff complained that he had been beaten by the arresting officers without any reason.

Lieutenant Menard photographed plaintiff. In accordance with Department policy, an ambulance was called to take plaintiff to a local hospital.

Lieutenant Menard also gave plaintiff a civilian complaint form at his request. However, plaintiff did not file a civilian complaint against any of the officers involved with his arrest of December 8, 2001.

Plaintiff was charged with Disorderly Conduct pursuant to Connecticut General Statutes § 53a-182, Threatening pursuant to Connecticut General Statutes § 53a-62, and Resisting Arrest pursuant to Connecticut General Statutes § 53a-167a.

In accordance with Department policy, Sergeant Molis, the Patrol Supervisor, investigated the incident. The Department found that the officers had not used excessive force inappropriate to plaintiff's arrest.

## Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against

the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Count One: Supervisory Liability

Defendants argue that summary judgment is appropriate on plaintiff's allegations of Fourth Amendment violations against Police Chief Fusaro and Lieutenant Menard, neither of whom were present during the arrest of plaintiff.

Section 1983 imposes liability only upon officials whose conduct has actually caused a violation of an individual's constitutional rights. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). Personal involvement of a supervisor may be established by evidence that (1) the official participated directly in the challenged conduct; (2) the

6

official, after learning of a subordinate's unlawful conduct, failed to remedy the wrong; (3) the official created a policy or custom of fostering the unlawful conduct; (4) the official was grossly negligent in supervising the subordinates who committed unlawful acts; or (5) the official exhibited deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  There must be an affirmative link between the alleged constitutional deprivation and the act of the supervisor that caused the alleged violation.  Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 1999).

In this instance, defendants Menard and Fusaro were not present at the arrest. Defendant Menard only interviewed plaintiff for bonding purposes and photographed him after the arrest.   An investigation of the arrest was conducted pursuant to Department policy, which investigation found no misconduct on the part of the officers. Nevertheless, plaintiff argues that Menard and Fusaro had notice of the Fourth Amendment violation of his rights and acted with deliberate indifference to such violation of his rights.  However, no evidence supports such an assertion or that defendants' conduct is causally linked to his injury so as to attach liability.  Accordingly, summary judgment will enter on these allegations.

<u>Count One: Fifth and Fourteenth Amendments</u>

Defendant argues for summary judgment on  plaintiff's allegations of violations pursuant to the Fifth and Fourteenth Amendments.

The Supreme Court has instructed that where a particular  amendment "provides an explicit textual source of constitutional protection," that amendment controls the analysis rather than a "substantive due process approach."  Graham v. Connor, 490

U.S. 386, 395 (1989); Bryant v. City of New York, 404 F.3d 128, 135 (2d Cir. 2005). The Court recognizes that a general due process claim is appropriate where a more specific source of protection is absent or open to question.  See  County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)(where Fourth Amendment did not apply to high speed police chase, substantive due process analysis was appropriate). However, in this instance, plaintiff's claims of false arrest, excessive force and infringement on his right to free speech fall squarely within the protections of the Fourth and First Amendments respectively.  Accordingly, substantive due process analysis is inappropriate in this instance, and summary judgment will be granted on plaintiff's allegations in count one pursuant to the Fifth and Fourteenth Amendments.

     Count One:  False Arrest

     Defendants assert that summary judgment is proper on plaintiff's claims of false arrest because the officers arrested the plaintiff with probable cause.  Alternatively, defendants argue that they are entitled to qualified immunity.

     Plaintiff counters that he was falsely arrested without probable cause since the officers arrested him when he was peacefully at home.  He argues that the officers should have  corroborated their information about his alleged disorderly conduct with his daughter, who was at Ms. Woodmansee's apartment at the time.

     "Probable cause is the single requirement for a lawful arrest under the Fourth Amendment." Romagnano v. Town of Colchester, 354 F.Supp.2d 129, 135 ((D.Conn. 2004).  "Probable cause is a compilation of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is

8

committing, or is about to commit an offense." Michigan v. DeFillipo, 443 U.S. 31, 37, (1979). "The burden of establishing probable cause rests with the police, who must establish that there was a quantum of evidence which amounted to more than a rumor or suspicion, or even a strong reason to suspect." Travis v. Village of Dobbs Ferry, 355 F.Supp.2d 740, 748 (S.D.N.Y. 2005).  The "'reasonable belief' standard may require less justification than the more familiar probable cause test." United States v. Manley, 632 F.2d 978, 983 (2d Cir. 1980), cert. denied, 449 U.S. 1112 (1981).  Probable cause exists "when officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996), cert. denied, 517 U.S. 1189 (1996).

     Police officers are not required "to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Caldarola v. Calabrese, 298 F.3d 156, 167-68 (2d Cir. 2002).  Probable cause exists when an officer receives information from "a putative victim or an eyewitness, . . . unless the circumstances raise doubts as to the person's veracity." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001).    In this instance, the officers received information from Ms. Woodmansee, the putative victim, about plaintiff's disorderly conduct toward her.  They also observed that personal items had been thrown around the room and that her mattress had been overturned.  This information and observations were sufficient for the officers to form a reasonable belief that plaintiff had committed disorderly conduct pursuant to

9

...

Connecticut General Statutes section 53a-182(a).[1]

In the alternative, defendants are entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability to the extent that their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The doctrine protects public officials from the risk of potentially ruinous monetary liability which would deter qualified people from public service and safeguards the public interest in having government employees act with independence and without fear of consequences. Eng v. Coughlin, 858 F. 2d 889, 895 (2d Cir. 1988).

In the case of a claim of false arrest, a police officer is entitled to qualified immunity if:   (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest.  Ricciuti v. N.Y.C. Transit Auth., 124 F. 3d 123, 128 (2d Cir. 1997).  A party is entitled to summary judgment based on qualified immunity if the court finds that the rights of the plaintiff were not clearly established or that no reasonable jury could conclude that it was objectively unreasonable for the defendant to believe that he was not clearly violating an established federal right.  Lee v. Sandberg, 136 F. 3d 94, 102 (2d Cir. 1996).

---

[1] "A person is guilty of disorderly conduct when with intent to case inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) make unreasonable noise;. . . ." Conn. Gen. Stat. § 52a-182a.

In light of the statements made by Ms. Woodmansee and the officer's observations of her apartment, it was objectively reasonable for the officers to believe that there was probable cause to make the arrest.  Summary judgment will be granted on plaintiff's claim of false arrest.

Count One:  First Amendment

In his complaint, plaintiff alleges that criminal charges were instituted against him "without legal cause and factual grounds, in an attempt to conceal their illegal actions, to hinder the Plaintiff in his redress of his injuries and losses through an appropriate civil proceeding, in violation of his rights" pursuant to the First Amendment.  Defendants construe plaintiff's allegations to claim that his arrest was in retaliation for his exercise of First Amendment rights, and/or that the arrest denied him access to the courts in violation of the First Amendment.  Defendants argue that summary judgment is appropriate on either claim.

In his opposition, plaintiff indicates he is asserting that he was beaten in retaliation for informing defendants that he did not want to be arrested.  Plaintiff does not address defendant's arguments relative to the denial of access to the courts.  Accordingly, any claim such claim is considered to be abandoned.   "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Taylor v. City of New York, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003).

The Court finds further that plaintiff has failed to sustain his burden as to the asserted retaliation claim.  To prevail on this free speech claim, plaintiff must prove: (1)

11

he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.  Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir.1998).

The Court assumes for purposes of this ruling that plaintiff has satisfied the first requirement. To the extent that plaintiff is alleging that his arrest was retaliatory, plaintiff's claim must fail since the Court has found that defendants had probable cause to arrest, or alternatively, are entitled to qualified immunity.  Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995), cert. denied, 517 U.S. 1189 (1996) (where defendants have probable cause or are entitled to qualified immunity, inquiry into the underlying motive for the arrest need not be undertaken).

To the extent that plaintiff asserts that the officers used force against him in retaliation for his speech, that claim also fails.  Plaintiff has proffered no evidence of defendants' motive.  Proof as to improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim.  See Blue v. Koren, 72 F.3d 1075, 1082-83 (2d Cir.1995).  Accordingly, summary judgment will be granted on plaintiff's First Amendment retaliation claim.

Count One:  Sixth Amendment

Plaintiff has not addressed defendants' argument in favor of summary judgment on his allegation of a Sixth Amendment violation.  Accordingly, this claim is deemed abandoned.  See Taylor, 269 F.Supp.2d at 75.

Count Two: Inadequate Screening, Training, and Supervision
Against Chief Fusaro

Defendants argue that even if a constitutional violation did occur, summary judgment should enter on plaintiff's allegations in count two that Chief Fusaro failed to screen, train, and supervise properly its police officers at the Norwich Police Department.[2] Specifically, defendants assert that plaintiff cannot establish the requisite personal involvement to hold Chief Fusaro liable for plaintiff's constitutional injuries.

The Court has previously articulated the general standards for imposition of supervisory liability. In the absence of direct evidence of an unconstitutional policy, a plaintiff may hold a municipal official liable in his or her official capacity under section 1983 for inadequate hiring, training, or supervision of employees if the official should have known that the alleged inadequacy was "so likely to result in the violation of constitutional rights," that the official "can reasonably be said to have been deliberately indifferent to the need." Walker v. City of New York, 974 F.2d 293, 298 (2d Cir.1992), cert. denied, 507 U.S. 961 (1993). Thus, plaintiff cannot impose liability upon defendant Fusaro for inadequate hiring, training, supervision without evidence of his deliberate indifference or gross negligence relative to the alleged deprivation of plaintiff's rights. See Colon, 58 F.3d at 874.

Plaintiff must show that 1) the supervisory official knew to a "moral certainty" that his employees would confront a given situation; 2) that the given situation either presents the employee with a difficult choice that more or different hiring, training, or supervision practices would reduce the risk of employees' mishandling such situations, or that there is a history of the employees mishandling; and 3) the wrong choice by the

---

[2]The Court considers the allegation that defendant Fusaro failed to discipline the officers as part of the supervision and training claims.

city employee would frequently cause a deprivation of a citizen's rights.  Walker, 974 F.2d at 297.

Plaintiff's claims must be supported by more than the fact that the misconduct occurred.  See  City of Canton v. Harris, 489 U.S. 378, 390 (1989).  A plaintiff "is expected to proffer evidence from which a reasonable fact-finder could conclude" that defendant's conduct was unreasonable, and that the inadequacy was closely related to the violation.  See  Amnesty America v. Town of West Hartford, 361 F.3d 113, 130 n.10 (2d Cir. 2004).

A failure to supervise claim may be established by showing that an official deliberately ignored an obvious need for supervision, while a failure to train claim requires plaintiff to establish that an official consciously disregarded a risk of future violations of constitutional rights by his employees.  Id. at 127 n.8.  As Amnesty instructs, plaintiff must provide evidence as to the training program and the way in which that program contributed to the violation. Similarly, plaintiff's inadequate screening claim requires that plaintiff to prove that "adequate scrutiny of [the officers'] background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire [them] would be the deprivation of a third party's federally protected right. . . ."  Bd. Of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 411 (1997).

In support of his claims, plaintiff submits only the police and prosecutor's reports which describe the officers' response to Ms. Woodmansee's 911 call, plaintiff's resistence to arrest, and the force applied.  According to the undisputed facts, the

incident was not ignored by Chief Fusaro, since a post-incident investigation was conducted pursuant to Department policy, which investigation concluded that the officers had not acted improperly.

Plaintiff adduces no evidence indicating that the defendant police officers have a history of similar incidents depriving individuals of their constitutional rights or of mishandling such situations. He proffers no evidence concerning the hiring, management, training or disciplinary practices of defendant Fusaro. No evidence raises an inference that Chief Fusaro had notice of unconstitutional conduct requiring more or better supervision and that he failed to rectify the situation. Thus, upon review of the record, the Court finds no indication of deliberate indifference or gross negligence on the part of Chief Fusaro. Accordingly, summary judgment will be granted in his favor on count two.

### Counts Three and Four: Inadequate Screening, Training and Supervision Against City of Norwich

In counts three and four, plaintiff alleges that the City of Norwich is liable to him for failure to screen, train, or supervise properly its police officers.

A municipality is liable for a deprivation of a citizen's rights pursuant to § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. New York City Dept. Of Social Services, 436 U.S. 658, 694 (1978). A municipality may be held liable for inadequate training, supervision or hiring where the failure to train, hire or supervise amounts to deliberate indifference to the rights of those with whom municipal

15

employees will come into contact.  City of Canton, 489 U.S. at 388.

Here, there is no direct evidence of a policy or custom causing plaintiff's alleged deprivation.  Further, as stated previously above relevant to the discussion of Chief Fusaro's liability, plaintiff has failed to raise an inference of deliberate indifference or gross negligence on the part of Chief Fusaro or another city official.  Summary judgment will be granted on counts three and four.

### Count Six: Recklessness/Gross Negligence

Defendants argue that summary judgment should enter on plaintiff's claim of recklessness and gross negligence.  Specifically, defendants assert that the conduct at issue does not rise to the level required for liability based on recklessness, and that Connecticut does not recognize a cause of action for gross negligence.  Plaintiff only addresses the argument relevant to recklessness.  Thus, the Court considers the gross negligence claim to be abandoned.  Taylor, 269 F.Supp.2d at 75.

Recklessness requires a "reckless disregard of the just rights or safety of others or of the consequences of the action."  Dubay v. Irish, 207 Conn. 518, 532 (1988).  Recklessness involves "an extreme departure from ordinary care."  Martin v. Brady, 261 Conn. 372, 379 (2002).  In this instance, defendants have not moved for summary judgment on plaintiff's claims of excessive force, assault and battery, and intentional infliction of emotional distress.  Accordingly, the Court will leave the issue of recklessness for the jury to consider along with these remaining claims.

### Counts Eight and Nine:  Negligence and Negligent Infliction of Emotional Distress

Defendants move for summary judgment on plaintiff's claims of negligence and

negligent infliction of emotional distress based on governmental immunity.

A municipal employee enjoys qualified immunity from tort liability based on unintentional conduct related to the performance of governmental or discretionary acts. See Elliot v. City of Waterbury, 245 Conn. 385, 411 (1998). "The hallmark of a discretionary act is that it requires the exercise of judgment." Lombard v. Edward J. Peters, Jr. P.C., 252 Conn. 623, 628 (2000). The manner in which a police officer makes an arrest, including when to use force, is a discretionary act. See Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180-181 (1988) (policing community and investigating those who break the law is discretionary function); see also Galindez v. Miller, 285 F.Supp.2d 190, 195 (D.Conn. 2003) (determination of what level of force to use under the circumstances "appears to fit" within framework of police discretion). However, such immunity does not apply where the conduct subjects an identifiable person to imminent harm. Bonamico v. City of Middletown, 47 Conn.App.758, 761 (1998). The Court requires further briefing from defendants regarding the applicability of the imminent harm exception. Accordingly, the Court will deny the motion for summary judgment without prejudice on the basis of governmental immunity. Defendants may refile for summary judgment on these claims with briefing on governmental immunity and its exceptions.

### Abandoned State Law Claims

Defendants request summary judgment on plaintiff's state constitutional claim, and on all state law claims against Lieutenant Menard since he was not involved in the arrest of plaintiff. Plaintiff has failed to address these arguments in his brief. Accordingly, the Court deems these claims abandoned. See Taylor, 269 F.Supp.2d at

75.

## CONCLUSION

Based on the foregoing discussion, defendants' motion for summary judgment [# 15] is GRANTED in part and DENIED in part.  Summary judgment is GRANTED on plaintiff's claims of 1) Fourth Amendment violations against defendants Fusaro and Menard based on supervisory liability in count one; 2) all Fifth and Fourteenth Amendment violations in count one; 3) false arrest in violation of the Fourth Amendment in count one; 4) First Amendment violations in count one; 5) Sixth Amendment violation in count one; 6) inadequate screening, training and supervision against Chief Fusaro and the city of Norwich in counts two, three and four; and 7) on all state law claims against Lieutenant Menard.  Summary judgment is DENIED with prejudice on plaintiff's claim of recklessness, and DENIED without prejudice on plaintiff's claims of negligence and negligent infliction of emotional distress.

Defendants may file a renewed motion for summary judgment on the issue of governmental immunity from the claims of negligence and negligent infliction of emotional distress within 30 days of this ruling's filing date.

_____/s/_____
Warren W. Eginton, Senior U.S. District Judge

Dated this \_\_22nd\_\_\_ day of March 2006 at Bridgeport, Connecticut.